UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SALVATORE JOHN CAPIZZI, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil No. 18-12043-LTS |
| NANCY A. BERRYHILL, | ) ) ) | |
| Defendant. | ) ) | |

MEMORANDUM AND ORDER

September 4, 2019

SOROKIN, J.

Salvatore John Capizzi challenges a decision by the Acting Commissioner of the Social Security Administration ("the Commissioner") denying his Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). The Commissioner seeks an order affirming her decision. For the following reasons, Capizzi's motion for Judgment on the Pleadings is DENIED, and the Commissioner's Motion is ALLOWED.

I.   BACKGROUND

   A.   Procedural History

On October 21, 2016, at age fifty-two, Capizzi applied for SSI and DIB, alleging a disability onset date of October 30, 2015. Doc. No. 14-2 at 14; Doc. No. 14-6 at 4. His application was denied initially and upon reconsideration. Doc. No. 14-3 at 64. Capizzi requested a hearing before an Administrative Law Judge ("ALJ"). Id. at 12. A hearing was held on February 5, 2018. Doc. No. 14-2 at 31. By decision on March 2, 2018, the ALJ found Capizzi was not disabled. Id. at 11.

The Appeals Council granted Capizzi's request for review, but affirmed the ALJ's decision. Id. at 2, 8. Capizzi filed this action appealing the Commissioner's decision on October 1, 2018. Doc. No. 1 at 3.

B. Capizzi's Physical Impairment

In his initial claim for disability, Capizzi described persistent pain in his right lower back and right leg through the calf and toes, and alleged a resulting inability to work due to difficulty sitting, standing, and concentrating for long periods of time. Doc. No. 14-2 at 1; Doc. No. 14-3 at 4. The record contains the following relevant evidence regarding his impairment:

- Following an October 17, 2013 MRI, neurologist Martin Bielawski noted Capizzi's prominent spinal scoliosis and disc degeneration. Doc. No. 14-7 at 27.

- On September 16, 2015, Capizzi was referred for physical therapy ("PT") after complaining of intolerable back pain to his primary care physician. Id. at 2. From September through December 2015, Capizzi attended fifteen PT sessions with good results and was discharged as symptoms improved. Doc. No. 14-3 at 11.

- From October 2015 until February 2016, Capizzi met with Dr. Bielawski four times. On October 9, 2015, Dr. Bielawski prescribed medication for Capizzi's pain, noting persistent back pain and increased painful symptoms with prolonged standing and walking. Doc. No. 14-8 at 69. On November 19, 2015, Dr. Bielawski increased the prescription, added another medication, and recommended core exercises for PT after Capizzi complained of increased discomfort from sitting, right leg pain, and numbness in the right toes. Doc. No. 14-3 at 13; Doc. No. 14-8 at 67.

- On January 7, 2016, Capizzi again reported increasing lower back and right leg pain. Doc. No. 14-7 at 50. Dr. Bielawski noted power in the legs were normal and the right leg

2

was not clearly weak, though it tired more easily, and referred Capizzi to a pain management clinic to consider spinal steroid injections and a new MRI. Id. The updated MRI revealed no significant change compared to 2013. Id. at 24-25; see Doc. No. 14-7 at 24-25.

- On February 2, 2016, Capizzi reported his medications were helpful, but said his pain was unchanged. Doc. No. 14-7 at 209.

- On February 24, 2016, Dr. Janet Pearl administered a steroid injection. Id. at 207. At a March 9, 2016 follow-up, Capizzi reported 80% pain relief in the right leg, resolved burning sensation in the foot, and improved lower back pain. Id. at 204. Around the same time, Capizzi also reported no significant side effects using medication. Doc. No. 14-8 at 63.

- On May 5, 2016, Capizzi reported more frequent and increased pain and requested another injection, but noted he still was 60-70% improved. Doc. No.14-7 at 201.

- On May 16, 2016, Capizzi received his second steroid injection. Id. at 199. He reported that his pain improved 75%, but felt the first injection had been more effective. Id. On June 6, 2016, Dr. Bielawski opined Capizzi's lower back pain would wax and wane. Doc. No. 14-8 at 61. He noted persistent lower back pain with intermittent pain down the right thigh and calf, with no numbness or tingling in the right leg, intermittent numbness in the right calf, but some pinching and numbness in the great right toe area. Id. He noted no change in power in the legs and no significant side effects of medication. Id. Dr. Bielawski recommended conservative treatment including pool therapy to maintain weight and discussed surgical treatments, providing referral information. Id. at 62.

- On July 12, 2016, Dr. Shapur Ameri provided a neurological surgery consultation. Doc. No. 14-3 at 12. Capizzi complained of lower back pain radiating to the right leg since September 2015, with additional complaints of numbness and tingling sensations in the right thigh down to his ankle but denied any weakness. Doc. No. 14-7 at 16. Dr. Ameri diagnosed Capizzi with lower back pain due to spinal scoliosis and degenerative disc disease. Id. at 17. Dr. Ameri advised Capizzi to continue pain management and steroid injections and, if pain persisted, to consider surgery. Id. He further advised against heavy lifting or strenuous exercise, and to apply heat and ice. Id.
- On July 14, 2016, Capizzi received his third steroid injection. Doc. No. 14-8 at 59. During a follow-up on July 28, 2016, Capizzi reported his pain was 85% improved, with this injection providing greater relief than the previous one. Doc. No. 14-7 at 193. He also reported intermittent tingling and pinching in his toes and said his calf pain was less frequent and intense. Id. On September 15, 2016, Capizzi described significant pain reduction for two weeks after the injection, pain the third week, and diminished pain the fourth week. Doc. No. 14-8 at 59. He was advised to continue conservative treatment, and to receive another injection if pain persisted. Doc. No. 14-3 at 12.
- On August 29, 2016, Capizzi reported 60-70% pain relief with current medication, no side effects, and no weakness in legs. Id. at 189-90.
- On September 15, 2016, Dr. Bielawski noted waxing and waning symptoms, with the worst pain in the right lower back region radiating into the thigh and calf. Doc. No. 14-8 at 59. He noted intermittent right leg pain but no power loss and recommended conservative treatment. Id.

- On November 4, 2016, Dr. Mark Finno examined Capizzi. Doc. No. 14-7 at 37. Dr. Finno documented Capizzi's conservative treatment methods with no lasting relief and recommended a surgical consultation. Id. at 37-38.
- On November 10, 2016, Dr. Symeon Zannikos provided an orthopedic surgery consultation for Capizzi's scoliosis. Id. at 28. Dr. Zannikos was not confident surgery would alleviate the symptoms and thought there was a high risk the procedure would exacerbate Capizzi's condition. Id. at 30. However, Dr. Zannikos opined Capizzi could be a good candidate for lumbar fusion and referred him for a second surgical consultation. Id. at 28, 31.
- Dr. Jessica Aidlen examined Capizzi on November 29, 2016, December 27, 2016, and January 20, 2017, pursuant to Dr. Zannikos's referral. Doc. No. 14-8 at 43. Dr. Aidlen assessed scoliosis in the lower spine. Id. She reviewed Capizzi's most recent MRI, concluded that spinal surgery alone would not allow for full decompression, and opined that a fusion would likely be required. Id. Dr. Aidlen referred Capizzi for diagnostic imaging due to the complexity of his symptoms. In addition, she recommended limiting Capizzi to occasionally lifting and carrying up to twenty pounds and never carrying more than that. Id. at 44.
- Based on the same three visits with Capizzi, Dr. Aidlen assessed a variety of additional limitations. Per Dr. Aidlen, Capizzi:
  - could sit for six hours in an eight-hour day, could stand for one hour and walk for one hour intermittently, and could not tolerate one position for more than twenty or thirty minutes at a time, id. at 45;

5

- o  should limit his right- and left-hand use, reaching, pushing, and pulling due to lumbar twisting and bending, id.;
- o  could not use his right foot, and could only occasionally use his left foot, due to leg pain and subjective sensory changes, id. at 45-47;
- o  could never balance, crouch, crawl, or climb ladders or scaffolds, and could only occasionally stoop, kneel, and climb stairs and ramps, because decreased lumbar motion and right leg pain could cause balance problems and falls, id.;
- o  could never work on unprotected heights, or with moving mechanical parts weighing ten pounds or more, id. at 48;
- o  could occasionally operate a car, id.;
- o  should not be exposed to humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme heat, extreme cold, or vibrations, id.; and
- o  was likely to be off task for at least 25% of an eight-hour workday, and absent more than four days per month, due to his pain and fatigue, id. at 48-49.
- Dr. Aidlen additionally opined Capizzi suffers from fatigue due to chronic leg and back pain, has difficulty sleeping, and requires constant pain medication that may cause fatigue, memory problems, and fogginess. Id. at 49.
- On December 8, 2016, Capizzi reported 60-70% pain relief, denied side effects from his medications, and denied weakness in his legs. Doc. No. 14-7 at 179-80. He said an electrical nerve stimulation unit had helped with his lower back pain, but not with his leg pain. Id. Dr. Pearl assessed Capizzi with atrophy of the right calf muscles, arthritis of the spine, and nerve pinching in the lower spine area. Id. at 180.

- On December 17, 2016, Dr. Susan Bergman noted Capizzi was able to perform all activities of daily life independently, despite pain in his lower back and leg related to scoliosis.  Doc. No 14-8 at 4.

- On January 17, 2017, Dr. Bielawski recommended continuing conservative treatment, explaining that surgery could cause further problems.  Id. at 58.

- In February 2017, Dr. Steven Hentoff performed a psychodiagnostic interview of Capizzi in connection with his SSI and DIB applications.  Id. at 25.  Dr. Hentoff noted Capizzi could perform activities of daily life independently.  Id. at 25, 28.

- On February 11, 2017, Dr. Bielawski recommended weight loss, lumbar and lower abdominal exercises, and other conservative treatment.  Id. at 56.

- Between May and June 2017, PT notes reflect good progress and clinically significant improvement in Capizzi's symptoms, including less intense and less frequent pain.  Id. at 100-01.  The notes also document increased movement and lifting capacity and the ability to sit for thirty or forty minutes at a time without discomfort if he switched positions.  Id.

- On May 23, 2017, Dr. K. Malin Weeratne reviewed Capizzi's medical records in connection with his applications for benefits.  Dr. Weeratne opined Capizzi: could occasionally lift or carry up to twenty pounds, frequently lift of carry ten pounds, stand or walk with normal breaks for a total of two hours, and sit with normal breaks for a total of six hours in an eight-hour work day; had unlimited use of hand or foot controls to push and pull; and should be able to change positions every hour for five minutes as needed to relieve discomfort.  Doc. No. 14-3 at 33.

C.   ALJ Hearing and Decision

At the February 5, 2018 ALJ hearing, Capizzi testified that he had last worked in October 2015 as a headhunter, and that he had ceased working due to pain that interfered with his concentration. Doc. No. 14-2 at 38. He described his symptoms as daily pain in the lower back, occasional right thigh pain that radiates to his foot, and toes that sting or burn. Id. at 39. He said his first steroid injection had reduced his pain for five or six weeks, but that subsequent injections had diminishing effects. Id. He mitigates his pain with medications, stretches, and exercise, and said surgeons have recommended conservative treatment because he is not incontinent and does not have severe muscle weakness. Id. at 40. Capizzi testified that he limits his driving when possible due to pain sitting up in a driving position, even as a passenger, and described difficulty sleeping at night, difficulty lifting or carrying objects, and a need to shift positions frequently between sitting, standing, and laying down. Id. at 41-42, 54-55.

In her decision, the ALJ determined Capizzi met the insurance requirements of the Social Security Act during the relevant time period, then conducted the five-step sequential evaluation to determine Capizzi's disability claim.[1] Doc. No. 14-2 at 15. At step one, the ALJ found that Capizzi had not engaged in substantial gainful activity from his alleged onset date of October 30, 2015 through his date last insured of June 30, 2017. Id. at 16. At step two, the ALJ found

---

[1] The five steps of the requisite analysis are: 1) whether the claimant is currently working (if so, he is not disabled and the inquiry ends); 2) whether the claimant has a severe impairment or combination of impairments (if not, he is not disabled and the inquiry ends); 3) whether any of the claimant's impairments meet or medically equal an impairment listed in an appendix to the relevant regulations (if so, he is disabled and the inquiry ends); 4) whether the claimant is able to perform his past relevant work (if so, he is not disabled and the inquiry ends); and 5) considering the claimant's age, education, work experience, and RFC, whether he is able to perform other work (if not, he is disabled; if so, he is not). See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see also Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 6-7 (1st Cir. 1982); Abubakar v. Astrue, No. 11-cv-10456-DJC, 2012 WL 957623, at *2 (D. Mass. Mar. 21, 2012).

Capizzi suffers from degenerative disc disease of the lumbar spine. Id. [2] At step three, the ALJ found that Capizzi's condition did not meet or equal any impairment listed in the relevant appendix to the regulations—a finding Capizzi does not dispute. 20 C.F.R. §§ 404.1520(d), 404.1526; Doc. No. 14-2 at 17.

After step three, the ALJ considered Capizzi's residual functional capacity ("RFC"), finding Capizzi: could occasionally lift and carry twenty pounds and frequently lift and carry ten pounds; could sit for six hours in an eight-hour workday; could stand or walk for a total of two hours in an eight-hour workday; should be allowed to switch positions between sitting and standing once every hour for five minutes at a time without going off task; could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; could never climb ladders, ropes, or scaffolds; must avoid all exposure to hazards; and could frequently work with both hands. Doc. No. 14-2 at 17.

In making this RFC assessment, the ALJ determined Capizzi's degenerative disc disease could reasonably be expected to cause his alleged symptoms, but that Capizzi's statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical evidence in the record. Id. at 18.[3] The ALJ gave the greatest weight to the assessment of Dr. Weeratne, partial weight to the assessment of Dr. Aidlen, great weight to the consultative examination report of Dr. Hentoff, and great weight to the opinions of the agency consultants. Id. at 23-24. The ALJ found Dr. Weeratne's assessment adequately

---

[2] The record also reflected mild carpal tunnel syndrome; however, the ALJ found this impairment to be non-severe, and Capizzi has not challenged that finding. Doc. No. 14-2 at 6.
[3] The Commissioner is not obligated to accept subjective complaints about symptoms. Reyes Robles v. Finch, 409 F.2d 84, 87 (1st Cir. 1969); accord Bianchi v. Sec'y of Health & Human Servs., 764 F.2d 44, 45 (1st Cir. 1985) ("The [Commissioner] is not required to take the claimant's assertion of pain at face value.").

accounted for Capizzi's pain complaints, and that Dr. Aidlen's assessment was inconsistent in certain respects with the record. Id.

At step four, the ALJ compared Capizzi's RFC with the physical and mental demands of his past work as a Controller, Personal Recruiter, and Temporary Placement Service Coordinator. Relying on the testimony of a vocational expert and the medical record, the ALJ concluded Capizzi's limitations do not preclude him from performing his past relevant work. Id. at 24. Accordingly, the ALJ concluded Capizzi was not disabled. Id. at 11.

## II. LEGAL STANDARDS

The Court my not disturb the Commissioner's findings where they are supported by substantial evidence and the Commissioner has applied the correct legal standard. 42 U.S.C. § 405(g). Conversely, where the Commissioner's finding is not supported by substantial evidence or is the result of an error of law, the Court will not uphold it. Id. Substantial evidence is more than a mere scintilla; it means such relevant evidence as a reasonable mind would accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); accord Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981); see Bath Iron Works Corp. v. U.S. Dep't of Labor, 336 F.3d 51, 56 (1st Cir. 2003) (noting substantial evidence is less than a preponderance of the evidence).

Where the administrative record might support multiple conclusions, the Court must uphold the Commissioner's findings if they are supported by substantial evidence, even if the Court would have reached a different conclusion. Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 770 (1st Cir. 1991); see Perales, 402 U.S. at 399 (noting resolution of conflicts in evidence, including medical evidence, is the Commissioner's task). As the Supreme Court has emphasized, "the possibility of drawing two inconsistent conclusions from the

evidence does not prevent an administrative agency's findings from being surrounded by substantial evidence." Am. Textile Mfrs. Inst., Inc. v. Donovan, 453 U.S. 490, 523 (1981) (quotation marks omitted).

Administrative findings of fact are not conclusive, however, "when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam). Moreover, an ALJ is not permitted to "substitute his own layman's opinion for the opinion of a physician," Gonzales Perez v. Sec'y of Health & Human Servs., 812 F.2d 747, 749 (1st Cir. 1987), nor may he disregard relevant medical evidence, Nguyen, 172 F.3d at 35.

ALJs commonly review assessments provided by three categories of medical experts: sources who have treated a claimant for his impairments, sources who have examined a claimant for purposes of rendering an opinion in connection with his disability claim, and sources who have reviewed a claimant's medical records but have not treated or examined him. See generally 20 C.F.R. §§ 404.1527, 416.927. "A treating source's opinion on the question of the severity of an impairment will be given controlling weight so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.'" Polanco-Quinones v. Astrue, 477 F. App'x 745, 746 (1st Cir. 2012) (per curiam) (quoting 20 C.F.R. § 404.1527(c)(2)). In other words, there is "a general presumption of deference to the treating physician's opinion." Abubakar, 2012 WL 957623, at *8. Notwithstanding this presumption, it is permissible for ALJs to rely on reports from non-treating physicians when they are more consistent with the record than reports provided by treating physicians. Berrios–Lopez v. Sec'y of Health and Human Servs., 951 F.2d 427, 431 (1st Cir. 1991).

III.     DISCUSSION

Capizzi challenges only one aspect of the ALJ's decision. He claims the ALJ erred in assigning only partial weight to Dr. Aidlen's medical opinion, despite Dr. Aidlen's status as a treating physician. Doc. No. 16 at 11-17. Capizzi argues Dr. Aidlen's opinion was based on appropriate medical findings documented throughout the record, was not contradicted by other substantial evidence in the record, and, therefore, was entitled to controlling weight. Id.

"[W]hile generic deference is reserved for treating source opinions, the regulations also presuppose that non-treating, non-examining sources may override treating doctor opinions, provided there is support for the result in the record." Shaw v. Sec'y of Health & Human Servs., 25 F.3d 1037 (Table), 1994 WL 251000, at *4 (1st Cir. June 9, 1994) (unpublished) (citing 56 Fed. Reg. 36931, 36936 (Aug. 1, 1991)); see Roshi v. Comm'r of Soc. Sec., No. 14-10705-JGD, 2015 WL 6454798, at *12 (D. Mass. Oct. 26, 2015) (holding that the ALJ's decision to adopt the opinion of a non-examining consultant over those of claimant's treating sources was supported by substantial evidence); Silvia v. Colvin, No. 13-11681-DJC, 2014 WL 4772210, at *21-22 (D. Mass. Sept. 22, 2014) (finding that the ALJ was justified in relying on the opinion evidence of two non-examining advisors because their opinions were consistent with the record).

Where an ALJ does not give controlling weight to a treating physician's opinion, she must determine how much weight to accord the opinion based on such factors as: 1) length of treatment relationship and frequency of examination, 2) nature and extent of the treatment relationship, 3) how well supported the conclusion is by relevant evidence, 4) how consistent the opinion is with the record as a whole, and 5) how specialized the treating physician's knowledge is. 20 C.F.R. §§ 404.1537(c)(2), 416.927(c)(2). She must give "good reasons" explaining her decision about what weight should be accorded to a treating source's opinion. Silvia, 2014 WL

4772210, at *9. However, not every factor will be relevant in every case, and there is a distinction between what the ALJ must *consider* and what she must *explain*. Mercogliano v. Berryhill, No. 17-11276-LTS, 2018 WL 4375103 at *12 (D. Mass. Sept. 13, 2018) (citing SSR 06-03p, 2006 WL 2329929, at *6-7). The ALJ need only explain the weight given to the "other source" opinions and "otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." Id.

Here, the ALJ offered just such an explanation. Doc. No. 14-2 at 16-25. The ALJ summarized the nature of Dr. Aidlen's three appointments with Capizzi between November 2016 and January 2017, the primary purpose of which was to obtain a surgical consultation. Id. at 21. The ALJ awarded "partial weight" to Dr. Aidlen's opinion, adopting several of her limitations, and rejecting—with explanation—only those limitations that were unsupported by or inconsistent with the medical evidence. Id. at 23.

In particular, the ALJ accepted Dr. Aidlen's opinions limiting lifting and carrying up to twenty pounds, standing and walking for two hours, sitting for six hours, frequent handling, and occasional postural maneuvers, finding they were consistent with medical record. Id. However, she rejected Dr. Aidlen's more restrictive limitations in reaching, pushing, pulling, and operating foot controls, explaining that the medical record elsewhere showed normal power in Capizzi's legs and arms. Id. at 24. The ALJ also rejected the amount of off-task activity and absenteeism Dr. Aidlen predicted, citing evidence of improvement in Capizzi's symptoms and functional capability in the months since Dr. Aidlen last saw him. Id. Finally, the ALJ rejected Dr. Aidlen's opinion that chronic pain and pain medication contribute to significant fatigue, finding no evidence that Capizzi consistently complained of fatigue or medication side effects. Id. at 23.

After deciding not to give Dr. Aidlen's opinion controlling weight, the ALJ appropriately considered the 20 C.F.R. § 404.1527(c)(2) factors to determine what weight to accord the opinion. The ALJ considered the length of the treatment relationship and the frequency of examination, noting Dr. Aidlen had only three appointments with Capizzi over a three-month time period. Doc. No. 14-2 at 21. She also considered consistency, comparing Dr. Aidlen's limitations to the other medical evidence. Id. at 22.

The Court has independently reviewed the record that was before the ALJ at the time of her decision and finds no basis to second-guess the manner in which the ALJ reconciled the various medical opinions and other conflicting evidence regarding Capizzi's symptoms and treatment. This is simply not a case where the ALJ summarily or unreasonably ignored medical evidence or rejected the considered opinion of a doctor with a consistent and lengthy history treating the claimant.

Put simply, substantial evidence supports the ALJ's decision, and the ALJ applied the correct legal standard.

IV.  CONCLUSION

For the foregoing reasons, Capizzi's motion for an order reversing or remanding the Commissioner's decision (Doc. No. 15) is DENIED, and the Commissioner's motion for an order affirming her decision (Doc. No. 23) is ALLOWED.

                                      SO ORDERED.

                                      /s/ Leo T. Sorokin
                                      United States District Judge